ELECTRONICALLY FILED - 2021 May 06 11:37 PM - HORRY - COMMON PLEAS - CASE#2021CP2602985

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | THE COURT OF COMMON PLEAS |
| ) | 15TH JUDICIAL CIRCUIT |
| COUNTY OF HORRY ) | |
| ) | CIVIL ACTION No. 2021-CP-__-_____ |
| Kenneth Grant and Dockside And Beyond, ) | |
| LLC, ) | |
| ) | |
| Plaintiffs, ) | **SUMMONS** |
| ) | |
| vs. ) | |
| ) | |
| State National Insurance Company, Inc., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | (JURY TRIAL DEMANDED) |

TO THE DEFENDANT, ABOVE NAMED

**YOU ARE HEREBY SUMMONED** and required to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your answer to the Complaint on the Plaintiff's attorney, Albert G. Bilbrey, Jr. at Cooper & Bilbrey, P.C., PO BOX 22513, Charleston, SC 29413, within FORTY-FIVE (45) days after the service hereof, exclusive of the day of such service, and if you fail to answer the Complaint within the time aforesaid, the Plaintiffs in this action will apply to the Court for the relief demanded in the Complaint.

COOPER & BILBREY, P.C.

By: s/Albert G. Bilbrey, Jr.
ALBERT G. BILBREY, JR., ESQUIRE
    Federal Court ID 12938
    South Carolina Bar 103799
    agbilbrey@jhcooper.com
JOHN HUGHES COOPER, ESQUIRE
    Federal Court ID 298
    South Carolina Bar 1387
    State Bar of Georgia 185986
    shiplaw@jhcooper.com
JOHN TOWNSEND COOPER, ESQUIRE
    Federal Court ID 10172

**Exhibit A**

South Carolina Bar 76087
jtc@jhcooper.com
PO BOX 22513
Charleston, SC 29413
843-883-9099; fax 843-883-9335

-AND-

LAW OFFICE OF WILLIAM STUART DUNCAN, PA

William Stuart Duncan, SC Bar #11549
Raymond C. Fisher, SC Bar #2023
1001 Front Street
PO BOX 736
Georgetown, SC 29442-0736
Telephone:     (843) 546-1212
Facsimile:      (843) 545-0177
wsdlaw1@aol.com
rfischer@lawyer.com

ATTORNEYS FOR PLAINTIFFS,
KENNETH GRANT and DOCKSIDE AND BEYOND, LLC

May 6, 2021
Charleston, South Carolina

**Exhibit A**

ELECTRONICALLY FILED - 2021 May 06 11:37 PM - HORRY - COMMON PLEAS - CASE#2021CP2602985

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| ) | FOR THE 15TH JUDICIAL CIRCUIT |
| COUNTY OF HORRY ) | |
| ) | CIVIL ACTION No. 2021-CP-__-_____ |
| Kenneth Grant and Dockside And Beyond, ) | |
| LLC, ) | |
| ) | |
| Plaintiffs, ) | **COMPLAINT** |
| ) | |
| vs. ) | |
| ) | |
| State National Insurance Company, Inc., ) | |
| ) | |
| Defendant. ) | |
| _____) | (JURY TRIAL DEMANDED) |

COME NOW Kenneth Grant and Dockside And Beyond, LLC, Plaintiffs in the above-captioned action, and, complaining of Defendant, show this Honorable Court as follows:

1. Plaintiff Kenneth Grant is a citizen and resident of Horry County, South Carolina.

2. Plaintiff Dockside And Beyond, LLC is a Delaware Corporation, however, its only member is Plaintiff Kenneth Grant.

3. Upon information and belief, Defendant is an insurance company, with a principal place of business in Texas and was insuring property in Horry County, South Carolina.

4. Plaintiffs invoke the jurisdiction of this Honorable Court pursuant to the general jurisdiction conferred by S.C. Const. Art. V, § 11.

5. This case is governed by the statues, common law, and equitable principles of the State of South Carolina.

6. Plaintiffs, during the period of August 15, 2018 through August 15, 2019, had in place a Tradewinds Yacht Insurance Policy, TWD00000921, issued by Defendant, insuring property located in South Carolina for an agreed upon value of $900,000.00

**Exhibit A**

ELECTRONICALLY FILED - 2021 May 06 11:37 PM - HORRY - COMMON PLEAS - CASE#2021CP2602985

7. Upon information and belief, on or about late May or early June, 2019, lightning or some other electrical event caused substantial damaged to the insured property, M/Y BROWN EYED GIRL, a 2005 60' Carver Yachts 56 Voyager (HIN No. CDRM7049J405) (the "Vessel").

8. The lightning strike, or, some other electrical event, caused substantial damage to the Vessel, including melting the Vessel's main batteries and causing damage to various electrical components and wiring.

9. The damage to the Vessel was so extensive that necessary repairs will require disassembly of the Vessel's hull in order to replace damaged electronic systems and wiring.

10. Plaintiffs filed a claim for damages to the Vessel in July 2019.

11. Sometime thereafter, Defendant replied to Plaintiff's claim, assigning claim number 1.46240.

12. In early 2020, Defendant appointed Donnalley Marine Services ("Donnalley Marine") to survey the damage to the Vessel, and on March 2, 2020, the Vessel was hauled out of the water and surveyed by Donnalley Marine Services ("Donnalley Marine") at Cherry Grove Marina in Little River, South Carolina.

13. Donnalley Marine recommended Sea Pupp, Inc. ("Sea Pupp"), 4227 Exchange Street, Little River, SC 29566 to provide an estimate for repairs.

14. Several weeks after receiving Sea Pupp's estimate, Defendant approved the estimate and Sea Pupp began repairs.

15. Mr. Grant instructed Sea Pupp to save the Vessel's melted batteries.

16. However, upon his return to the Vessel, the batteries were gone and Mr. Grant was informed they had been exchanged and were not recoverable.



**Exhibit A**

17. After completion of the repairs, Plaintiff Grant reported to Defendant's agent, Brian Donnalley ("Donnalley"), that he suspected the quality of repair work was poor because many of the Vessel's systems that were fully functional prior to the lightning strike, or, other electrical event were still not working.

18. Despite Mr. Grant's warnings, on April 9, 2020, the Vessel was returned to the water for a sea trial.

19. Approximately 15 minutes into the sea trial, the starboard engine died and the Vessel limped back to the dock on one engine.

20. During this time, the Vessel's windshield wipers began to operate and could only be disengaged by shutting off the Vessel's main circuit breaker.

21. During the remainder of April and through May 2020, Sea Pupp returned three times to work on the Vessel replacing various components, *e.g.*, the spotlight, Jenn Aire switch, and blower motors in the engine room.

22. Shortly after replacing the spotlight, the new one blew out; after replacing the Jenne Aire switch, another magnetic switch went out; and after replacing the blower motors, they worked for a few days and also went out.

23. Finally, after several attempts at repairing the issues with the Vessel, the Sea Pupp repairman admitted that he had no idea what was wrong.

24. On June 23, 2020, JT Marine inspected the Vessel and concluded that the Vessel's wiring harness (approximately 75 components) was bad and needed to be replaced, otherwise, the problems would persist and continue to get worse.



**Exhibit A**

25. Upon information and belief, replacing the wiring harness is an extensive repair which would be virtually impossible to perform, given the Vessel's construction, without disassembly of the hull.

26. Over the next several months, A&M Marine, Specialized Marine, Carver (the Vessel's manufacturer), and Phil Spadaro (the Vessel's long-time captain), similarly concluded that the Vessel's wiring harness likely needed to be replaced.

27. Both A&M Marine and Specialized Marine stated that in order to repair the Vessel preapproval from Defendant was required.

28. However, Donnalley stated he "couldn't endorse any of it" and wanted to place the Vessel back in the water to "see how things shake out".

29. On August 11, 2020, Mr. Grant received a call from James Vinci, Defendant's new adjuster assigned to the claim, and was informed that Cote Marine would be coming to inspect the Vessel.

30. On September 7, 2020, Jim Cote, of Cote Marine arrived to survey the Vessel at Defendant's request. He was displeased that the Vessel was out of the water and asked where the other marine electrical expert, Sarkis Keuleyan, was.

31. Mr. Grant informed Cote Marine that Defendant had denied Mr. Keuleyan's participation.

32. Approximately one month later, Cote Marine informed Defendant it wasn't able to repair the Vessel in its present state, and that the Vessel should be transported to Savannah, GA.

33. On September 21, 2020, Mr. Vinci informed Mr. Grant that Defendant wanted to hire EJ International from New York to provide an estimate for repairs.

34. September 24, 2020 through September 27, 2020, EJ International came to the Vessel and provided and estimate for repairs.



35. During the months of October through November 2020, Mr. Grant repeatedly tried to contact Mr. Vinci but was never able to reach him and never received a return call.

36. In early January 2021, the Mr. Vinci contacted Mr. Grant and informed him that if Mr. Keuleyan would agree to be involved in the Vessel repair, the claim could be resolved in a few days.

37. Despite Mr. Vinci's remarks, arrangements were never made to involve Mr. Keuleyan.

38. In late January, the claim was reassigned again to another adjuster, Jennifer Baucage, who informed Mr. Grant that Knox Marine, Donnalley, Cote Marine, Ed Brill, and another unknown person would come to the Vessel if Mr. Grant could wait another seven weeks.

39. During the interim, Donnalley was scheduled to visit the Vessel again on February 26, 2021, but never showed up.

40. On February 28, 2021 JT Marine and Cote Marine came to the Vessel.

41. After being informed JT Marine and Cote Marine had departed, Mr. Grant, meticulous that the Vessel was always secure, went to the Vessel to ensure she was locked up.

42. Upon his arrival he discovered the Vessel in extreme disarray.

43. Defendant then requested Mr. Grant make a new claim for subsequent damages, caused by Defendant's agents.

44. Sometime after, Defendant hired James Boit to verify the Vessel's HIN number based on a theory that the HIN number had been altered.

45. On or about Mr. Boit verified that the HIN number was correct and matched the Vessel's confidential HIN numbers.

46. To date, the Vessel has not been repaired, the claim has not been paid, and the claim has not been denied.



**Exhibit A**

## FIRST CAUSE OF ACTION
### (Breach of Contract)

47. Plaintiffs restate the above allegations as if set forth verbatim herein.

48. The parties entered into a valid contract of insurance, insuring the Vessel against certain hazards, including property damage caused by lightning, or, other electrical event.

49. Plaintiffs timely paid all insurance premiums.

50. Plaintiffs fully abided by their obligations pursuant to the contract.

51. Plaintiffs filed a proper claim against the aforesaid policy of insurance.

52. Plaintiffs fully cooperated with Defendant.

53. In the course of approximately two years, Defendant has yet to repair the Vessel, pay the claim based on the agreed upon value, or deny the claim.

54. Plaintiffs have incurred damages to the Vessel, covered under the terms of the aforementioned insurance policy, as a result of Defendant's undue delay and incompetent handling of Plaintiff's claim.

55. Plaintiffs continue to incur damages to the Vessel as a result of Defendant's undue delay and inappropriate handling of Plaintiff's claim.

56. Plaintiffs are entitled to judgment against Defendant for actual damages due to Defendant's breach of contract.

## SECOND CAUSE OF ACTION
### (Bad Faith of Insurance Company)

57. Plaintiffs restate the above allegations as if set forth verbatim herein.

58. A duty of an insurer is implicit in every insurance contract to act in good faith and fair dealing in handling claims.

ELECTRONICALLY FILED - 2021 May 06 11:37 PM - HORRY - COMMON PLEAS - CASE#2021CP2602985


**Exhibit A**

59. Plaintiffs made a valid claim against Defendant under the Tradewinds Yacht Policy, and any reasonable person would believe that Plaintiffs' claim is a valid claim.

60. Defendant failed to exercise its duty of good faith by failing to repair the Vessel, pay the claim based on the agreed upon value of the Vessel, or deny the claim thereby constituting an act of bad faith on the part of Defendant.

61. Plaintiffs are entitled to punitive damages as a deterrent and as proper relief for Defendant's bad faith handling of their claim.

WHEREFORE, Plaintiffs pray for judgment against Defendant for compensatory and special damages for breach of the insurance contract and for punitive damages for its breach of the duty of good faith and fair dealing.

RESPECTFULLY SUBMITTED:

COOPER & BILBREY, P.C.

By: s/Albert G. Bilbrey, Jr.
ALBERT G. BILBREY, JR., ESQUIRE
 Federal Court ID 12938
 South Carolina Bar 103799
 agbilbrey@jhcooper.com
JOHN HUGHES COOPER, ESQUIRE
 Federal Court ID 298
 South Carolina Bar 1387
 State Bar of Georgia 185986
 shiplaw@jhcooper.com
JOHN TOWNSEND COOPER, ESQUIRE
 Federal Court ID 10172
 South Carolina Bar 76087
 jtc@jhcooper.com
PO BOX 22513
Charleston, SC 29413
843-883-9099; fax 843-883-9335

-AND-



LAW OFFICE OF WILLIAM STUART DUNCAN, PA

William Stuart Duncan, SC Bar #11549
Raymond C. Fisher, SC Bar #2023
1001 Front Street
PO BOX 736
Georgetown, SC 29442-0736
Telephone: (843) 546-1212
Facsimile: (843) 545-0177
wsdlaw1@aol.com
rfischer@lawyer.com

ATTORNEYS FOR PLAINTIFFS,
KENNETH GRANT and DOCKSIDE AND BEYOND, LLC

May 6, 2021
Charleston, South Carolina

**Exhibit A**